1  JOSEPH A. SCHWACHTER, Bar No. 108124
   MICHAEL J. HUI, Bar No. 273212
2  LITTLER MENDELSON, P.C.
   333 Bush Street, 34th Floor
3  San Francisco, CA  94104
   Telephone:   415.433.1940
4  Fax No.:     415.399.8490
   jschwachter@littler.com
5  mhui@littler.com

6  Attorneys for Defendant
   VERSACE USA, INC.
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 | CHRISTOPHER SAMPINO, on behalf of | Case No. _____
   | himself, all others similarly situated, and |
12 | the general public, | [Alameda County Superior Court Case No. RG16839178]
13 | Plaintiff, |
   | | **DEFENDANT VERSACE USA, INC.'S NOTICE TO FEDERAL COURT FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
14 | v. |
15 | VERSACE USA, INC., a New York corporation and DOES 1 through 100, inclusive, |
16 | | [28 U.S.C. §§ 1332(A), 1441& 1446]
17 | Defendants. |

18

19         TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF

20 CHRISTOPHER SAMPINO, AND HIS ATTORNEYS OF RECORD

21         PLEASE TAKE NOTICE that Defendant Versace USA, Inc. ("Versace"),

22 contemporaneously with filing this Notice, effects removal of the above-referenced action from the

23 Superior Court in the State of California for the County of Alameda to the United States District

24 Court for the Northern District of California.

25 I.    THIS COURT HAS JURISDICTION

26         1.    Under 28 U.S.C § 1332(a), this Court shall have original jurisdiction of all

27 civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

28 interest and costs, and is between citizens of different States.  An action may be removed from state

---

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

Case No. _____                                    Notice of Removal

court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the defendant, within thirty days of defendant receiving the initial pleading through service, and within one-year of the commencement of the action. *See* 28 U.S.C. § 1446(a)-(b).

2. Pursuant to Northern District of California Court Rule 3-5(a), this action is removed under the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. § 1332(a). The following facts support this jurisdictional claim under 28 U.S.C. § 1332(a): (1) the amount in controversy exceeds $75,000, exclusive of interest and costs, (2) the parties are citizens of different states, and (3) Versace is not a citizen of this State.

## II. INTRADISTRICT ASSIGNMENT

3. Pursuant to Northern District of California Court Rule 3-5(b), this action arises in Alameda County and, thus, shall be assigned to the San Francisco Division. *See* N.D. Cal. Ct. R. 3-2(c) & (e); Declaration of Michael J. Hui ("Hui Decl.") ¶ 2, Exhibit ("Exh.") A (Complaint) at ¶ 6.

## III. VENUE IS PROPER

4. Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Plaintiff Christopher Sampino, on behalf of himself and others similarly situated, bring this Action in the Superior Court in the State of California for the County of Alameda, which is located within the District and Division of this Court. *See* 28 U.S.C § 1446(a). Plaintiff also alleges that the operative acts took place in Alameda County. Hui Decl. ¶ 2, Exh. A at ¶ 6.

## IV. PLEADINGS, PROCESS AND ORDERS

5. This lawsuit arises out Plaintiff's employment with Versace. On November 16, 2016, Plaintiff filed a lawsuit, entitled *Christopher Sampino, on behalf of himself, all others similarly situated, and the general public v. Versace USA, Inc. a New York corporation, and DOES 1 through 100*, County of Alameda Superior Court Case No. RG16839178, which included a Summons and Civil Case Cover Sheet. A true and correct copy of the Complaint is attached as Exhibit A to the Hui Declaration. *See* Hui Decl. ¶ 2, Exh. A. The Complaint asserts the following causes of action: (1) failure to compensate for all hours worked, (2) failure to provide meal and rest

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. _____                2.                                Notice of Removal

breaks, (3) failure to maintain accurate records, (4) failure to furnish wage and hour statements, (5) failure to pay final wages on time, (6) race discrimination and harassment, (7) failure to prevent and investigate discrimination and harassment, (8) wrongful termination, and (9) unfair business practices. *See id.*

6. On December 13, 2016, Versace filed its Answer to Plaintiff's Complaint in the Superior Court of California for the County of Alameda. A true and correct copy of the Answer is attached as Exhibit B to the Hui Declaration. *See* Hui Decl. ¶ 3, Exh. B.

7. Under 28 U.S.C. § 1446(a), the attached exhibits constitute all process, pleadings, and orders served upon Versace or filed or it received in this action. To Versace's knowledge, no further process, pleadings, or orders related to this case have been filed in Alameda County Superior Court or served by any party.

8. As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint in this action.

V.   **TIMELINESS OF REMOVAL**

9. An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on a defendant, within thirty days of the defendant receiving the initial pleading through service, and within one-year of the commencement of the action. *See* 28 U.S.C. § 1446(a)-(b). Removal of this action is timely because this Notice has been filed within thirty days from November 17, 2016, when Versace was served with the Complaint and first became aware this action was removable. Declaration of Jennifer Schwartz ("Schwartz Decl.") ¶ 4; *see* 28 U.S.C. § 1446(b).

VI.  **JURISDICTION PURSUANT TO 28 U.S.C. § 1332 (A)**

A.   **Diversity Exists Because Plaintiff is a California Citizen, and Versace is a Citizen of New York**

10. Diversity under 28 U.S.C. § 1332(a)(1) exists when the parties are "citizens of different states . . . ." Only the citizenship of the named parties in a class action is considered for diversity purposes. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). When an action is maintained on behalf of others, non-diverse members do not affect diversity jurisdiction. *Id.*

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. _____                            3.                            Notice of Removal

11.     Plaintiff alleges that he was at the time of the filing of this action, and still is, a resident and citizen of the State of California. Hui Decl. ¶ 2, Exh. A at ¶ 1; *see also, District of Columbia v. Murphy*, 314 U.S. 441, 455 ("place where a man lives is properly taken to be his domicile until the facts adduced establish the contrary"); *Gutterman v. Wachovia Mortgage*, 2011 U.S. Dist. LEXIS 74521, *4 (C.D. Cal. Mar. 31, 2011) (plaintiff's residence and ownership of property sufficient to establish his domicile).

12.     For diversity jurisdiction, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). When this action was commenced in state court, Versace was, and still is, a corporation organized under the laws of the State of New York. Schwartz Decl. ¶ 2; *see also* Hui Decl. ¶ 2, Exh. A at ¶ 2. Versace's principal place of business, where its corporate offices and headquarters housing its executive and administrative functions are located, is in New York, New York. *See id.* As such, Versace is a citizen of the State of New York, where it is incorporated and where it has its principal place of business. *See Hertz Corp. v. Friend*, 130 U.S. 1181, 1192-93 (2010) (the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities").

13.     For purposes of removal, this Court may disregard Does 1 through 100. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.")

14.     No party other than Versace has been named or served as of the date of this removal.

15.     As explained above, Plaintiff is a citizen of the State of California, while Versace is a citizen of the State of New York. Complete diversity of citizenship exists because the named parties are citizens of different states.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. _____                4.                Notice of Removal

**B.     The Amount in Controversy Exceeds $75,000 based on Damages and Attorneys' Fees Sought by Plaintiff**

16.     Under 28 U.S.C. § 1332(a), a matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs. To remove a case from a state court to a federal court, a defendant must file a notice of removal containing a short and plain statement of the grounds for removal. *See Dart Cherokee Basin Operating Company LLC v. Brandon W. Owens*, 135 S. Ct. 547, 551 (2014). When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. *See id.* Defendant's notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554; *Ibarra v. Manheim Investments, Inc.*, 775 F. 3d 1193, 1195 (9th Cir. 2015). Evidence establishing the amount in controversy is only required when plaintiff contests or the court questions defendant's allegations. *See Dart*, 135 S. Ct. at 551.

17.     "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *See Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Ibarra*, 775 F. 3d at 1198 n. 1 (explaining that even when the court is persuaded the amount in controversy exceeds $5 million, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the damages in controversy).

18.     Versace denies the validity and merits of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. Nevertheless, and notwithstanding Plaintiff's failure to allege the total damages claimed, the amount in controversy as alleged by Plaintiff exceeds the sum of $75,000, even when considering only *some* (as opposed to all) of his claims.

19.     For purposes of calculating the amount in controversy, Versace will focus on Plaintiff's Sixth to Eighth Causes of Action.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. _____                                5.                                Notice of Removal

### 1. There Is At Least $184,800 in Controversy for Plaintiff's Six, Seventh, and Eighth Causes of Action for Racial Discrimination and Harassment, Failure to Prevent Discrimination and Harassment, and Wrongful Termination, Respectively

20. Plaintiff alleges that Versace treated him differently because he was African American. Hui Decl. ¶ 2 Exh. A at ¶ 16. According to Plaintiff, Versace trained Plaintiff and its employees to verbalize a secret code, "D410," or to hold up a black colored shirt whenever an African American customer entered the store. *Id.* at ¶ 13. The "D410" code was allegedly on the tags of all black colored items of clothing. *Id.* at ¶ 14.

21. Plaintiff alleges that he "complained about the harassment and discrimination to one of Plaintiff's managers. Nonetheless, Defendant[] did not investigate Plaintiff's complaints or take action to stop the harassment and discrimination." Hui Decl. ¶ 2, Exh. A at ¶ 116.

22. Plaintiff also alleges that, despite the fact that he met or exceeded expectations, Versace terminated his employment because he does not understand "luxury." Hui Decl. ¶ 2 Exh. A at ¶ 17. Plaintiff alleges that Versace "perceived minorities such as [P]laintiff as not understanding the 'luxury life.'" *Id.* at ¶ 127.

#### a. There Is $59,800 in Controversy for Back and Front Pay

23. As part of his race-related claims, Plaintiff alleges that he "suffered from a loss of earnings, other employment benefits, accrued but unpaid salary bonuses and benefits[], front pay, back pay, severance pay, and other monetary damages." Hui Decl. ¶ 2, Exh. A at ¶ 119.

24. At the time of Plaintiff's separation from Versace, Plaintiff earned $13 per hour and generally worked 40 hours per week. Schwartz Decl. ¶ 5. Assuming that Plaintiff were to recover back pay from the time of his separation, which Plaintiff alleges occurred on October 1, 2016 (*see id.* ¶ 5), until the date of this Notice of Removal, Plaintiff would be entitled to at least $5,720 in lost wages (11 weeks x 40 hours per week x $13 per hour). Thus, Versace's potential liability for back pay would be **$5,720**.

25. Front pay awards in California frequently span a number of years. *See Smith v. Brown-Forma Distillers Corp.*, 196 Cal. App. 3d 503, 518 (1989) (front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.*, 55 Cal. App. 3d 91, 97-98 (1976) (four

Case No. _____     6.     Notice of Removal

1  years). Even conservatively estimating that Plaintiff seeks front pay benefits for only the next two
2  years, the amount of future wages in controversy in this case would total at least an additional
3  $54,080 (52 weeks per year x 2 years x 40 hours per week x $13 per hour). Thus, Versace's
4  potential liability for front pay would be **$54,080.**

5     26. Thus, the total amount in controversy for back and front pay amounts to
6  **$59,800 ($5,720 + $54,080).**

7       **b. There Is At Least $25,000 in Controversy for Emotional Distress**

8     27. Plaintiff seeks emotional distress damages for "humiliation, depression,
9  anxiety, loss of sleep, loss of appetite, and body-aches" as part of his race-related claims. Hui Decl.
10  ¶ 2, Exh. A at ¶ 119.

11     28. Emotional distress damages may be considered in calculating the amount in
12  controversy even if not clearly pleaded in the complaint. *See Simmons v. PCR Technology*, 209
13  F.Supp.2d 1029, 1034 (N.D. Cal. 2002); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp.447,
14  450 (S.D. Cal. 1995). While there is no a precise measure of damages for emotional distress, a
15  plaintiff is entitled to "'an amount that will reasonably compensate her for all loss or harm,' which
16  may include reasonable compensation for 'suffering, anguish, fright, horror, nervousness, grief,
17  anxiety, worry, shock, humiliation, and shame" that plaintiff has suffered and is "reasonably certain
18  to suffer' in the future." California Practice Guide: Employment Litigation, Chin, M.W., § 17:350,
19  The Rutter Group (2012) (citing CACI 1604, 3905A). Furthermore, a plaintiff may recover for
20  detriment reasonably certain to result in the future. *See* Cal. Civ. Code, § 3283.

21     29. Defendant disputes that Plaintiff is entitled to any such award, nonetheless,
22  plaintiffs in employment cases have been awarded substantial sums for emotional distress. *See, e.g.,*
23  *Gardenhire v. Housing Authority of the City of Los Angeles*, 85 Cal. App. 4th 236, 240-241 (2002)
24  (affirming judgment, including jury award of $1.3 million in emotional distress damages for
25  wrongful termination in violation of public policy claim); *Swinton v. Potomac Corp.*, 270 F.3d 794
26  (9th Cir. 2001), cert. denied, 535 U.S. 1018 (2002) (award of $30,000), and *Redfield v. Insurance*
27  *Co. of N. Am.*, 940 F.2d 542 (9th Cir. 1991), *overruled on other grounds, Dotson v. United States*, 87
28  F.3d 682 (5th Cir. 1996) (award of $25,000).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. _____   7.   Notice of Removal

30. In *Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), *cert denied*, 127 S.Ct. 157 (2006), the Ninth Circuit upheld the lower court's finding that the amount in controversy had been established. In reaching its holding, the Ninth Circuit reasoned that the plaintiff's "emotional distress damages would add at least an additional $25,000 to her claim" where she had only $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." *Id.* at 980. A similar result is compelled here, as Plaintiff expressly seeks damages for emotional distress. Hui Decl. ¶ 2, Exh. A at Prayer for Relief. Thus, based on *Kroske* and other employment cases, the emotional distress component of Plaintiff's claims adds at least **$25,000** to the amount in controversy.

   c.   **There Is At Least $100,000 in Controversy for Punitive Damages**

31. Plaintiff seeks to recover punitive damages for his race-related claims. Hui Decl. ¶ 2, Exh. A at Prayer for Relief.

32. Punitive damages are included in calculating the amount in controversy. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F. 2d 785, 787 (9th Cir. 1963); *See also, State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332 (S.D. Iowa 1994). California law does not provide any specific monetary limit on the amount of punitive damages which may be awarded under California Civil Code section 3294, and the proper amount of punitive damages under California law is based on the reprehensibility of defendant's misdeeds, the ratio between compensatory and punitive damages, and ratio between damages and defendant's net worth. *See Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357 (9th Cir. 1994).

33. Some courts have recognized that an award for punitive damages can be significant, and that in some cases, a punitive award itself could establish the amount in controversy. *See e.g., Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (concluding in a discrimination and wrongful termination case that the purpose of punitive damages is to capture the defendant's attention and to deter others from similar conduct and, thus, the plaintiff's claim for punitive damages could alone exceed the jurisdictional minimum).

34. The employment claims alleged here are of the type that has resulted in jury verdicts in excess of $75,000. It is appropriate for the Court to consider the jury verdicts these

analogous cases. *See Surber v. Reliance National Indemnity Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000) ("In order to establish probable punitive damages, a party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts"). Notably, numerous court decisions and jury verdicts in state and federal courts located within the Ninth Circuit demonstrate that compensatory and punitive damages in excess of $75,000 have been awarded to individual plaintiffs where, as here, the plaintiff has alleged claims for discrimination and wrongful termination. *See, e.g., Hagan v. Archdiocese of Los Angeles,* 2001 WL 803303 (Cal. Super. Ct.) (awarding $200,000 in punitive damages in pregnancy discrimination case); *Shay v. TG Construction, Inc.*, 2002 WL 31415020 (Cal. Super. Ct.) (awarding $325,000 in punitive damages in disability discrimination case); *Brown v. LNP Engineering Plastics, Inc.*, 1997 WL 828516 (Cal. Super. Ct.) ($667,000 in punitive damages in disability discrimination case). A true and correct copy of the summaries is attached as Exhibit C to the Hui Declaration. *See* Hui Decl. ¶ 3, Exh. C.

35.     Thus, if Plaintiff were to prevail on any one of his race-related claims, the punitive damages alone could exceed the jurisdictional minimum. Notwithstanding, Versace *conservatively* estimates that punitive damages would amount to **$100,000**, despite the large punitive damages awarded in *Hagan* and *Brown*.

    **2.**     **There Is At Least $65,000 in Controversy for Plaintiff's Attorneys' Fees**

36.     Plaintiff seeks to recover attorneys' fees. Hui Decl. ¶ 2, Exh. A at Prayer for Relief. Attorneys' fees are included in calculating the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where potentially recoverable by statute); *see Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (court may estimate the amount of reasonable attorneys' fees likely to be recovered by a plaintiff if she were to prevail in determining whether amount in controversy exceeds $75,000). Under the Fair Employment and Housing Act, the court may award reasonable attorneys' fees to Plaintiff if he is the prevailing party. *See* Cal. Gov. Code § 12965(b).

37.     Attorneys' fees awards can be significant in wage and hour cases. *See e.g., Martin v. The Old Turner Inn*, 2003 WL 22416020 (Cal. Super. Ct. 2003) (awarding $147,610 in

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. _____                    9.                    Notice of Removal

attorneys' fees and costs to a single plaintiff who recovered $49,508 in a wage hour case); *Bandoy v. Huh*, 1996 WL 675975 (Cal. Super. Ct. 1996) (awarding $73,680 in attorneys' fees in a single plaintiff wage hour case).

38. Attorney's fees awards in employment matters under the Fair Employment and Housing Act ("FEHA") often exceed $75,000. *See e.g., Flannery v. Prentice*, 26 Cal. 4th 572 (2001) (California Supreme Court upheld an award of attorneys' fees under FEHA for $891,042); *Rivera v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 58610, *12-13 (N.D. Cal. 2008) (on denying motion for remand, the court stated that employment discrimination claims require a great deal of preparation and effort to maintain and at Plaintiff's attorneys' claimed rate of $400 an hour, fees will likely become substantial), *citing to Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (noting that in the Court's twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages and found the jurisdictional maximum was satisfied); *Dwyer v. Crocker Nat'l Bank*, 194 Cal. App. 3d 1418 (1987) ($75,258 in attorneys' fees awarded under FEHA); *Zissu v. Bear, Stearns & Co.*, 805 F.2d 75 (1986) ($550,000 in attorneys' fees awarded under FEHA). In 2001, the California Supreme Court upheld an award of attorneys' fees under FEHA for $1,088,231. *See Flannery v. Prentice*, 26 Cal. 4th 572 (2001); *see also Dwyer v. Crocker Nat'l Bank*, 194 Cal. App. 3d 1418 (1987) ($75,258 in attorneys' fees awarded under FEHA); *Zissu v. Bear, Stearns & Co.*, 805 F.2d 75 (1986) ($550,000 in attorneys' fees awarded under FEHA).

39. Among the many ways to demonstrate prevailing market rates, are the following: (1) declarations from local attorneys (*U.S. v. City & County of San Francisco*, 748 F.Supp. 1416, 1431 (N.D. Cal. 1990)); (2) rates awarded to the claiming attorneys in previous actions (*Margolin v. Regional Planning Comm'n*, 134 Cal.Ap. 3d 999 (1982)); or (3) rates awarded to attorneys of comparable experience in other cases in the same market (*id.*).

40. Here, Plaintiff's attorneys' fees alone are likely to exceed $75,000 should Plaintiff prevail. *See, e.g., Baratta v. Oracle Group*, 2000 WL 33766080 (Cal. Super. Ct.) ($127,000 awarded in pregnancy discrimination case brought under the FEHA); *Akers v. County of San Diego*, 1999 WL 1938858 (Cal. Super. Ct.) (awarding $273,481 in attorneys' fees in FEHA pregnancy

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

discrimination case); *Jalomo v. HRO Systems, Inc.*, 1999 WL 1069181 (Cal. Super. Ct.) (awarding $160,050 in attorneys' fees in pregnancy discrimination case brought under FEHA). A true and correct copy of the summaries is attached as Exhibit C to the Hui Declaration. *See* Hui Decl. ¶ 3, Exh. C.

41. In *Lewis v. North American Video Corp.*, 2012 WL 5882262, a class action matter handled by Plaintiff's counsel, Michael Hoffman at Hoffman Employment Lawyers, P.C., a state court found that "f[ound] that the amount of hours expended by Class Counsel - 378 - and the hourly billing rate of counsel (ranging from $325 to $475) are reasonable and establish a lodestar of $137,915, which is within the range of reasonableness for the San Francisco Bay Area legal market and complex cases of this type." (Parenthesis in original.)

42. Conservatively estimating that an hourly billing rate of $325 per hour applies and that Plaintiff's counsel will expend 200 hours prosecuting this case, containing hybrid wage and hour and race-related claims, Versace's potential liability in attorneys' fees would amount to **$65,000**, which does not account for a multiplier. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) (lodestar amount may be increased by an multiplier based on various factors); *Burlington Northern R.R. Co. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526, 534 (8th Cir. 2000) (in diversity action, state law applies to determine both the right to fees and the method of calculating fees).

**3. There Is At Least An Aggregate Amount of $249,800 In Controversy— Far Exceeding the Jurisdictional Minimum**

43. The aggregate amount of $249,800, which does not even take into account Plaintiff's wage and hour claims, exceeds the $75,000 jurisdictional minimum:

| Plaintiff's Cause of Action | Amount in Controversy |
|---|---|
| Race-Related Claims | $184,800 |
| Attorneys' Fees | $65,000 |
| **Total** | **$249,800** |

44. Thus, the "amount in controversy" requirement under 28 U.S.C. §1332(a) is satisfied.

Case No. _____  11.  Notice of Removal

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

## VII. NOTICE OF REMOVAL TO THE COURT AND ADVERSE PARTY

45. Promptly after the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Alameda, California as required by 28 U.S.C. § 1446(d).

## VIII. CONCLUSION

46. In conclusion, Versace removes the civil action filed against it in the California Superior Court, County of Alameda, to the United States District Court for the Northern District of California.

Dated: December 16, 2016

/s/ *Joseph A. Schwachter*
JOSEPH A. SCHWACHTER
MICHAEL J. HUI
LITTLER MENDELSON, P.C.
Attorneys for Defendant
VERSACE USA, INC.

Firmwide:144306624.2 068570.1007

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Case No. _____     12.     Notice of Removal

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|
| NAME: JOSEPH SCHWACHTER, SBN 10824; MICHAEL HUI, SBN 273212<br>FIRM NAME: LITTLER MENDELSON P.C.<br>STREET ADDRESS: 333 BUSH STREET, 34TH FLOOR<br>CITY: SAN FRANCISCO  STATE: CA  ZIP CODE: 94104<br>TELEPHONE NO.: 415.433.1940  FAX NO.: 415.399.8490<br>E-MAIL ADDRESS: mhui@littler.com<br>ATTORNEY FOR (name): DEFENDANT, VERSACE USA, INC. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 FALLON STREET<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: OAKLAND, 94612<br>BRANCH NAME: | |
| Plaintiff/Petitioner: CHRISTOPHER SAMPINO<br>Defendant/Respondent: VERSACE USA, INC. | CASE NUMBER:<br>RG16839178 |
| **PROOF OF SERVICE–CIVIL**<br>**Check method of service** (only one):<br>☐ By Personal Service   ☐ By Mail   ☒ By Overnight Delivery<br>☐ By Messenger Service   ☐ By Fax | JUDICIAL OFFICER:<br><br>DEPARTMENT: |

*Do not use this form to show service of a summons and complaint or for electronic service.*
*See USE OF THIS FORM on page 3.*

1. At the time of service I was over 18 years of age **and not a party to this action.**
2. My residence or business address is: 333 BUSH STREET, 34TH FLOOR, SAN FRANCISCO, CA 94104
3. ☐ The fax number from which I served the documents is *(complete if service was by fax)*:
4. On *(date):* DECEMBER 16, 2016   I served the following **documents** *(specify):*
CIVIL CASE COVER SHEET; DEFENDANT VERSACE USA, INC.'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT; DECLARATION OF MICHAEL J. HUI IN SUPPORT OF DEFENDANT VERSACE USA, INC.'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT; DECLARATION OF JENNIFER SCHWARTZ IN SUPPORT OF DEFENDANT VERSACE USA, INC.'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT; DEFENDANT VERSACE USA, INC.'S CORPORATE DISCLOSURE STATEMENT AND CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

   ☐ The documents are listed in the *Attachment to Proof of Service-Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: MICHAEL HOFFMAN, STEPHEN NOEL ILG, HOFFMAN EMPLOYMENT LAWYERS, P.C.
   b. ☒   *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      580 CALIFORNIA STREET, 16TH FLOOR, SAN FRANCISCO, CA 94104
   c. ☐ *(Complete if service was by fax.)*
      (1) Fax number where person was served:
      (2) Time of service:

   ☐ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

Page 1 of 3

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-040 [Rev. January 1, 2016] | **PROOF OF SERVICE—CIVIL**<br>**(Proof of Service)** | Code of Civil Procedure, §§ 1011, 1013, 1013a<br>2015.5; Cal. Rules of Court, rule 2.306<br>*www.courts.ca.gov* |



**POS-040**

| CASE NAME: | CASE NUMBER: |
|---|---|
| SAMPINO v. VERSACE USA, INC. | RG16839178 |

6. b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☒ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: DECEMBER 16, 2016

BARBARA PALOMO
(TYPE OR PRINT NAME OF DECLARANT)

▶ *(signature)*
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date:

(NAME OF DECLARANT)     ▶     (SIGNATURE OF DECLARANT)