**EMMA LAW, P.C.**
LEONARD EMMA, SBN 224483
lemma@employment-lawyers.com
STEPHEN NOEL ILG, SBN 275599
silg@employment-lawyers.com
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel:   415-362-1111
Fax:   415-362-1112

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER SAMPINO, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>VERSACE USA, INC., a New York corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 4:16-CV-07198-JSW<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:   August 16, 2019<br>Time:  9:00 a.m.<br>Judge: Hon. Jeffrey S. White<br>Court: Ctrm. 5, 2nd Floor |

*Sidebar (rotated text):* **EMMA LAW, P.C.** 1999 Harrison Street, 18th Floor, Oakland, CA 94612 (415) 362-1111

**TO THE COURT, ALL INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED THAT** on August 16, 2019 at 9:00 a.m., in Courtroom 5 on the 2nd floor of this Court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Christopher Sampino, Joshua Gallegos, and Michael Gonzalez, individually, and on behalf of all others similarly situated, will and hereby do move for an order granting final approval to the settlement of claims as set forth in the Class Settlement Agreement and Addendum to Class Settlement Agreement ("Agreement" or "Settlement") in the above-captioned matter.

This motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the amount offered in the Settlement; the risks of further litigation; the experience and views of counsel; the lack of objections to the Settlement; and the public policy in favor of quieting litigation.  This motion is based upon the Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Leonard Emma and exhibits thereto, the anticipated Declaration of the Settlement Administrator, the complete files and records of this action, and any further briefing, documentary evidence, and arguments of counsel as may be presented to the Court at the hearing of this motion.

Respectfully Submitted,

Dated: April 8, 2019                          EMMA LAW, P.C.


/s/ Leonard Emma
_____
Leonard Emma, Esq.
Attorneys for Plaintiffs and the Class

**EMMA LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**EMMA LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................1

II.  CASE BACKGROUND.........................................................................................2

   A.   The Parties.................................................................................................2

   B.   The Pleadings.............................................................................................2

   C.   Investigation and Discovery.....................................................................3

   D.   Settlement Negotiations............................................................................3

III. DESCRIPTION OF THE SETTLEMENT............................................................4

   A.   The Class....................................................................................................4

   B.   Consideration.............................................................................................4

   C.   Mechanics of Settlement...........................................................................4

   D.   PAGA Allocation.......................................................................................5

   E.   Class Representative Enhancement Payments...........................................5

   F.   Attorneys' Fees and Litigation Costs........................................................6

   G.   Release of Claims......................................................................................6

   H.   The Court-Approved Notice Program........................................................6

   I.   Class Members' Response to the Settlement..............................................7

IV.  LEGAL ARGUMENT..........................................................................................8

   A.   Standard of Review....................................................................................8

   B.   All Relevant Factors Weigh in Favor of Final Approval..........................9

      1.   The Strength of the Case......................................................................9

      2.   The Size of the Claims and Amount Offered to Settle Them...........11

      3.   The Risk, Expense, Complexity, and Likely Duration of Litigation....12

      4.   The Stage of the Proceedings............................................................13

      5.   Experienced Counsel Adequately Represented the Class..................14

-iii-

6.   The Response of the Class to the Proposed Settlement ............................................ 15

V.   THE PARTIES HAVE IMPLEMENTED THE COURT-APPROVED NOTICE

PROGRAM AND THE SETTLEMENT ADMINISTRATOR'S FEES MAY BE

AWARDED ...................................................................................................................... 16

VI.   CONCLUSION ................................................................................................................ 16

**EMMA LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

*Sampino v. Versace / Case No. 4:16-cv-07198-JSW*
Notice of Motion and Motion for Final Approval

**TABLE OF AUTHORITIES**

**CASES**

*Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ................... 8

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ........................................................ 15

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................. 15

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ............................. 16

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................................ 12

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) .......................................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................... 8, 9

*Hicks v. Toys 'R'Us–Delaware, Inc.*, 2014 WL 4703915, at *1

  (C.D. Cal. Sept. 2, 2014) .......................................................................................................... 12

*In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................... 15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .............. 13

*In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ........... 15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ............................................. 12

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976) ............................... 15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................................... 16

*Nat'l Rural Telcomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................. 15

*Nordstrom Com'n Cases*, 186 Cal.App.4th 576, 589 (2010) ..................................................... 12

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......................... 8, 12

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................................... 15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................................... 8

*Williams v. Brinderson Constructors*, 2017 WL 490901, at *5

  (C.D. Cal. Feb. 6, 2017) .......................................................................................................... 12

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................................... 2

Cal. Lab. Code § 201 .................................................................................... 2, 3

Cal. Lab. Code § 226 ....................................................................................... 2

Cal. Lab. Code § 226.3 .................................................................................... 2

Cal. Lab. Code § 226.7 .................................................................................... 2

Cal. Lab. Code § 406 ....................................................................................... 3

Cal. Lab. Code § 512 ....................................................................................... 2

Cal. Lab. Code § 1174 ..................................................................................... 2

Cal. Lab. Code § 1174.5 ................................................................................... 2

Cal. Lab. Code § 2802 ..................................................................................... 3

Fed. R. Civ. P. 23 ...................................................................................... 8, 16

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

**EMMA LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Christopher Sampino, Joshua Gallegos, and Michael Gonzalez, individually, and on behalf of all others similarly situated, ("Plaintiffs" or "Class Representatives") and Defendant Versace USA, Inc. ("Defendant" and/or "Versace") (collectively, the "Parties") moved this Court for preliminary approval of a proposed class settlement of this matter on October 5, 2018 (Dkt. No. 54.) ("Motion for Preliminary Approval"). On December 17, 2018, the Court issued an order directing the parties to submit supplemental briefing and submissions. (Dkt. No. 59.) On January 17, 2019, the Parties submitted supplemental briefing and submissions. (Dkt. No. 60.) On January 23, 2019, the Court entered an order granting preliminary approval to the Settlement[1] and certified the following Class:

> All individuals who Versace employed in the State of California in a retail salesperson position from November 16, 2012 to September 21, 2018.
>
> (Dkt. 61 ("Order Granting Preliminary Approval").)

In accordance with the terms of the Settlement and the Court's Order Granting Preliminary Approval, Analytics Consulting, LLC (the "Settlement Administrator), mailed the Court-approved Notice of Class Action Settlement and Release of Clams (the "Notice") to 96 Class Members on February 21, 2019. The Notice provides a 60-day period for Class Members to opt-out or object. Class Members are not required to submit a claim form to participate in the Settlement. As of April 5, 2019, zero Class Members have opted-out of the Settlement. As of April 5, 2019, zero Class Members have objected to the Settlement. Of the 96 Notices that were originally sent out, four were undeliverable. New addresses were found for these four Class Members and their Notices were remailed to the new addresses.[2] (Emma Decl. ¶ 2.)

---

[1] The Class Settlement Agreement and Addendum to Class Settlement Agreement may be found at Dkt. Nos. 54-2 and 60-1, respectively.

[2] After the opt-out period expires on April 22, 2019, Plaintiffs will submit a Declaration from the Settlement Administrator setting forth the details and final results of the Notice procedure. Plaintiffs may also submit a Supplemental Declaration of Leonard Emma, if appropriate. (Emma Decl. ¶ 2.)

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

1    Plaintiffs hereby move the Court for an order granting final approval to the Settlement.

2  This motion is made on the grounds that the Settlement is fair, adequate, and reasonable given

3  the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity

4  and likely duration of further litigation; the amount offered in settlement; the experience and

5  views of counsel; the lack of opt-outs to the Settlement; the lack of objections to the Settlement;

6  and the public policy in favor of quieting litigation.  (Emma Decl. ¶ 3.)

7  II.    **CASE BACKGROUND**

8      A.    **The Parties**

9      Defendant Versace USA, Inc., is a well-known luxury retailer that operates clothing

10 boutiques worldwide, including at a handful of locations within California.   In 2016, Plaintiff

11 Christopher Sampino was employed by Versace as a retail salesperson at its Livermore outlet

12 location.  Plaintiff Joshua Gallegos worked at the Livermore outlet location from approximately

13 mid-2016 to mid-2017.  Plaintiff Michael Gonzalez worked at Versace's Beverly Center store as

14 a sales associate from approximately October 2016 to April 2017.  (Emma Decl. ¶ 4.)

15     B.    **The Pleadings**

16     On November 16, 2016, Plaintiff Sampino filed this action against Versace.  Sampino

17 asserts various wage and hour claims under California law, including the following: (1) Failure

18 to Compensate for All Hours Worked; (2) Failure to Provide Meal and Rest Periods (Cal. Lab.

19 Code §§ 226.7, 512); (3) Failure to Maintain Accurate Records (Cal. Lab. Code §§ 1174, 1174.5);

20 (4) Failure to Furnish Wage and Hour Statements (Cal. Lab. Code, §§ 226(e), 226.3); (5) Failure

21 to Timely Pay Final Wages (Cal. Lab. Code § 201); and (6) Unfair Competition (Cal. Bus. &

22 Prof. Code § 17200).   Sampino also alleges individual claims for Racial Discrimination and

23 Harassment, Failure to Prevent and Investigate Discrimination and Harassment, and Wrongful

24 Termination.  On December 13, 2016, Defendant Versace filed its Answer, denying all claims

25 and asserting affirmative defenses.  (Emma Decl. ¶ 5.)

26     On April 19, 2017, Plaintiff Sampino filed a First Amended Complaint ("FAC").  The

27 FAC clarified that the claims for Racial Discrimination and Harassment, Failure to Prevent and

28

-2-

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

1   Investigate Discrimination and Harassment, and Wrongful Termination were individual claims

2   asserted on behalf of Plaintiff Sampino only.  (Emma Decl. ¶ 6.)

3          On June 5, 2018, Plaintiff Sampino filed a Motion for Leave to File a Second Amended

4   Complaint ("SAC").  The proposed SAC added additional class representatives (Plaintiffs Joshua

5   Gallegos and Michael Gonzalez), a class reimbursement claim (Cal. Lab. Code §§ 406, 2802),

6   and Plaintiff Gallegos' individual claims.   The proposed SAC also modified the allegations

7   regarding the exhaustion of administrative remedies under PAGA so that they were made on

8   behalf of all three Plaintiffs.  Plaintiff's Motion for Leave was fully briefed at the time the Parties

9   resolved this matter and filed a Joint Notice of Settlement.  (Dkt. No. 50.)   As part of the

10  Settlement, the Parties agreed to resolve the claims set forth in the proposed SAC.  The SAC was

11  filed on October 10, 2018.  (Dkt. No. 56.)  (Emma Decl. ¶ 7.)

12      **C.**      **Investigation and Discovery**

13         Over the course of nearly two years, the Parties conducted extensive written discovery

14  and exchanged detailed information and data concerning the claims, defenses, and alleged

15  damages at issue herein.  Class Counsel continuously met and conferred with counsel for Versace

16  to ensure sufficient information had been exchanged to permit evaluation of the claims at issue.

17  For example, Class Counsel obtained the contact information for putative class members and

18  then interviewed them.  Class Counsel reviewed thousands of pages of documents produced in

19  response to written discovery requests, including documents pertaining to the policies and

20  practices complained of herein.  Class Counsel engaged an expert statistician to analyze class-

21  wide time and pay records to ascertain the types and frequency of violations.  Class Counsel

22  conducted several depositions.  (Emma Decl. ¶ 8.)

23      **D.**      **Settlement Negotiations**

24         On July 17, 2018, the Parties engaged in a full day of arm's length negotiations before

25  Mark Rudy, an experienced and well-respected neutral in wage and hour class action litigation.

26  At mediation, the Parties agreed upon the key terms of the Settlement.  The Parties later negotiated

27  additional terms and drafted a formal Settlement Agreement, which was presented to this Court for

28

-3-

approval.  Plaintiffs and Class Counsel believe that the Settlement is fair, reasonable, and adequate and is in the best interest of Class Members in light of all known facts and circumstances, including the defenses asserted by Defendant, the risk of delay, and potential appellate issues.  The Parties are represented by competent and experienced wage and hour class action counsel with whom they consulted prior to settling.  (Emma Decl. ¶ 9.)

## III.   DESCRIPTION OF THE SETTLEMENT

### A.   The Class

Plaintiffs bring this action on behalf of all individuals who Versace employed in the State of California in a retail salesperson position from November 16, 2012 to September 21, 2018.  (Settlement Section I.)  Versace has identified 96 Class Members.  (Emma Decl. ¶ 10.)

### B.   Consideration

Versace has agreed to pay Three Hundred Thousand Dollars ($300,000.00 USD) (the "Settlement Amount").  Versace is also responsible for paying the employer's share of all payroll taxes customarily and ordinarily paid by employers.  The payment of these taxes is not included in the Settlement Amount.  (Settlement Section II.)

### C.   Mechanics of Settlement

The Net Settlement Amount means that portion of the Settlement Amount to be allocated and made available for payment to Class Members after subtracting: (i) attorneys' fees, (ii) costs, (iii) enhancement payments, (iv) settlement administration costs, and (v) the PAGA payment to the LWDA.  (Settlement Section II.)

For each Class Member, the Settlement Administrator shall determine the number or portion of workweeks worked during the Class Period based upon information provided by Versace.  Partial weeks will be rounded up to the nearest full week.  The sum of the workweeks worked by all Class Members shall be the "Total Workweeks."  The pro-rata share of the Net Settlement Amount to each Class Member will be calculated as follows: (a) The Net Settlement Amount shall be divided by the number of Total Workweeks; the resulting figure is the "Workweek Dollar Value." (b) For each Class Member, the Settlement Administrator shall

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

-4-

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

multiply the number of workweeks the Settlement Class Member worked during the Class Period by the Workweek Dollar Value.  The resulting figure shall be the "Gross Allocated Amount" for each such Class Member.  (c) The Gross Allocated Amount was indicated on the Notice sent to each Class Member.  (Settlement Section VII.)

Because Class Members' claims include claims for wages, penalties, and interest, (i) 34% of the net payment to each Class Member shall be treated as wages, reported on an IRS form W-2, and (ii) 66% shall be treated as payment for penalties and interest, reported on an IRS Form 1099.[3]  (Settlement Section II.)  Defendant's share of any payroll taxes owed will be paid separately by Defendant.  (Settlement Section II.)  Any checks issued to Class Members shall remain negotiable for a period of one hundred eighty (180) days from the date of mailing.  Any checks that remain uncashed after one-hundred eighty (180) days will be voided.  The funds associated with any checks which are not timely negotiated will be deposited to the unclaimed funds division of the State of California.  (Settlement Section VII.)

### D.      PAGA Allocation

The The Settlement allocates Fifteen Thousand Dollars ($15,000.00) to the settlement of Plaintiffs' PAGA claim on behalf of all Class Members.  (Settlement Section II.)  Pursuant to the express requirements of Cal. Labor Code § 2699(i), the PAGA Penalty Payment shall be allocated as follows: Eleven Thousand Two Hundred Fifty Dollars ($11,250) (75%) to the LWDA for the enforcement of labor laws and education of employers, and Three Thousand Seven Hundred Fifty Dollars ($3,750) (25%) to be included in the distribution to Class Members.  (Settlement Section II.)

### E.      Class Representative Enhancement Payments

Subject to Court approval, the Settlement provides for Enhancement Payments of Two Thousand Dollars ($2,000) each to Class Representatives Sampino, Gallegos, and Gonzalez for

---

[3] The $3,750.00 allocated as the employees' share of the PAGA Allocation, discussed below, shall be deemed penalties and interest or other non-wage recovery and not subject to payroll taxes.

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

their time, risk, and effort as the representatives of the class.[4]  (Settlement Section II.)

### F.    Attorneys' Fees and Litigation Costs

Class Counsel will seek court approval of, and Versace will not oppose Class Counsel's request for, Ninety-Nine Thousand, Nine Hundred and Ninety Dollars ($99,990.00), approximately thirty-three percent (33%) of the Maximum Gross Settlement Amount, for reasonable attorneys' fees to compensate and reimburse Class Counsel for the work already performed by Class Counsel in this case and all of the work remaining to be performed by Class Counsel in securing Court approval of the Settlement and ensuring that the Settlement is fairly administered and implemented, among other ongoing duties that may arise.  Class Counsel will also be allowed to apply separately for reimbursement of reasonable litigation costs incurred. (Settlement Section II.)[5]

### G.    Release of Claims

In exchange for the consideration provided by Defendant, Class Members who do not timely exclude themselves from the settlement will release all claims that were pled or that could have been pled based on the factual allegations asserted.  (Settlement Section V.)  The Class Representatives stipulate to a broader general release that includes all claims, whether known or unknown, against Versace.  (Settlement Section V.)

### H.    The Court-Approved Notice Program

Per the Order Granting Preliminary Approval and the terms of the Settlement, the Settlement Administrator has completed many of its duties.  Fees for administration are estimated to be $10,000.[6]  (Emma Decl. ¶ 11.)

Settlement administration duties included (or will include), *inter alia*, the following: calculating awards, formatting and mailing the Notice, processing any potential requests for

---

[4] Details regarding Plaintiffs' efforts are set forth in the concurrently filed Motion for Attorneys' Fees, Costs and Class Representative Enhancement Payments.

[5] Details regarding Class Counsel's request for fees and costs are set forth in the concurrently filed Motion for Attorneys' Fees, Costs and Class Representative Enhancement Payments.

[6] As mentioned above, the Settlement Administrator will provide a declaration following the close of the opt-out period setting forth details regarding the work it has performed.

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

exclusion and objections (there are none as of April 5, 2019), performing necessary skip traces on Notices returned as undeliverable mailing Class Member settlement checks, responding to Class Member inquiries as needed, issuing any required tax reporting forms, providing status reports to Counsel for the Parties, hosting a website and phone line for Class Members to obtain more information, and drafting a declaration of compliance with the terms of the Stipulation. (Emma Decl. ¶ 12.)

Counsel for Defendant provided the Settlement Administrator with a list containing the Class Member's names, last known addresses, and other employment information required to process the settlement (the "Class List"). The Class List contained data for 96 Class Members. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Notice. (Emma Decl. ¶ 13.)

The Settlement Administrator then mailed the Court-approved Notice to 96 Class Members on February 21, 2019. The Notice provides a 60-day period for Class Members to opt-out or object. Class Members are not required to submit a claim form to participate in the settlement. (Emma Decl. ¶ 14.)

I.      **Class Members' Response to the Settlement**

As of April 5, 2019, zero Class Members have opted-out of the Settlement. As of April 5, 2019, zero Class Members have objected to the Settlement. Of the 96 Notices that were originally sent out, four were undeliverable. New addresses were found for these four Class Members and their Notices were remailed to the new addresses. In addition, Class Counsel has been contacted by several Class Members since the Notices were mailed. Class Counsel is pleased to report that, thus far, Class Members universally support the Settlement.[7] (Emma Decl.

---

[7] After the opt-out period expires on April 22, 2019, Plaintiffs will submit a Declaration from the Settlement Administrator setting forth the details and final results of the Notice procedure.

¶ 15.)

## IV.   LEGAL ARGUMENT

### A.   <u>Standard of Review</u>

Federal law and public policy strongly favor and encourage settlements, especially in class actions.  *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989), cert. denied, 498 U.S. 890 (1990) ("it hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits").  When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) .

To approve a proposed settlement of a class action under Fed. R. Civ. P. 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).   Furthermore, analysis of the appropriateness of approval begins with a presumption of fairness.  Where "a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair."  *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525, *18 (S.D. Cal. Dec. 2, 2008).

The presumption of fairness applies here:  As discussed above, Plaintiffs obtained sufficient information permitting them to assess the strengths and value of the case before entering into settlement negotiations.  The Settlement was negotiated by capable counsel, using an experienced mediator.  In light of these facts, the Settlement is presumptively fair, and, as explained below, all relevant factors support final approval.

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

-8-

**EMMA LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

B.   **All Relevant Factors Weigh in Favor of Final Approval**

Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered.  These factors include: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, i.e., whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement. *Hanlon*, 150 F.3d at 1026 (noting that the relative importance of each of these factors will depend on the circumstances of the case).  Here, all factors weigh strongly in favor of final approval.

1.   **The Strength of the Case**

a.   Meal and Rest Period Claims

Plaintiffs contend that Defendant failed to authorize and permit meal and rest periods as required by California law.  Specifically, Plaintiffs contend that Defendant (i) did not maintain adequate policies, (ii) did not provide adequate training, and (iii) discouraged Class Members from taking breaks.  Plaintiffs contend that this is evidenced by the fact that timekeeping records show many instances of noncompliant meal breaks.  Plaintiffs further contend that Defendant failed to pay premiums when breaks were not provided.  (Emma Decl. ¶ 16.)

Defendant contends that Class Members were authorized and permitted to take meal and rest breaks and that this fact is evidenced by the fact that timekeeping records show that Class Members routinely took compliant meal and rest breaks.  Defendant maintains that it is not required to police the workplace to ensure that Class Members actually avail themselves of all meal and rest breaks provided.  Defendant further argues that, as partially commissioned employees, Class Members may sometimes elect to forego a meal or rest period in an effort to earn more commissions.  Defendant contends that, in such cases, it cannot be liable because the noncompliant meal or rest period is the result of the voluntary choice of the Class Member and not a result of any failure on its part to authorize or permit meal and rest periods.  Defendant's

-9-

1   arguments may undercut Plaintiffs' ability to prevail at trial.  (Emma Decl. ¶ 17.)

2              b.    <u>Off-the-Clock and Overtime Claims</u>

3         Plaintiffs contend that Defendant encouraged them to provide sales support to

4   international customers after-hours, and that this work occurred off-the-clock and without

5   compensation (including overtime compensation where applicable).  (Emma Decl. ¶ 18.)

6         Defendant contends that it maintained a policy and practice prohibiting class members

7   from working off-the-clock.  Defendant contends that, if any class members worked off-the-clock

8   work, it happened without Defendant's knowledge.  Defendant further contends that it was not

9   required to pay overtime wages to class members because they were exempt salespersons.  These

10  arguments may undercut Plaintiffs' ability to prevail at trial.  (Emma Decl. ¶ 19.)

11             c.    <u>Reimbursement Claim</u>

12        Plaintiffs contend that, in connection with providing sales support to customers after-

13  hours, Defendant required Plaintiffs to use their personal cell phones without reimbursement.

14  Defendant contends that a business landline was available at retail store locations and that class

15  members were not required to use their personal cell phones to conduct company business.

16  Defendant further contends that, to the extent that class members used their personal cell phones

17  for company business, it occurred without Defendant's authorization or knowledge.  These

18  arguments may undercut Plaintiffs' ability to prevail at trial.  (Emma Decl. ¶ 20.)

19             d.    <u>Derivative Claims</u>

20        The class claims for inaccurate wage statements, failure to timely pay final wages, unfair

21  business practices, and PAGA violations are predicated on, and derive from, the underlying wage

22  and hour violations described above.  Thus, the risks described above apply to these derivative

23  claims. Defendant further disputes its actions were "willful" and trigger waiting time

24  penalties. Although authority is divided, Defendant also disputes that meal and rest period

25  violations can give rise to waiting time and wage statement claims. Moreover, the Court

26  has virtually unlimited discretion to reduce the amount of penalties under PAGA.  This adds

27  significant uncertainty regarding the evaluation of damages for derivative claims, as the Court

28

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

-10-

may be reluctant to permit duplicative recovery for a single underlying violation. (Emma Decl. ¶ 21.)

### 2. The Size of the Claims and Amount Offered to Settle Them

Plaintiffs estimate that if the Class were to prevail in all claims at trial, with all factual and legal issues being resolved in the Class' favor, the potential recovery for the Class would max out at approximately $1,000,000.00, calculated as follows:

Meal break claim: $167,400.00 (estimated 5,580 violations at $30 per violation, based on analysis of time and pay records and class member interviews)

Rest break claim: $167,400.00 (estimated 5,580 violations at $30 per violation, based on analysis of time and pay records and class member interviews)

Off-the-clock claim: $144,000.00 (one hour of off-the-clock work at $30 per hour every other week per class member, based on analysis of pay records and class member interviews)

Overtime claim: $65,000.00 (based on analysis of time and pay records)

Reimbursement claim: $11,040.00 (based on cell phone reimbursement of $5 per month per full-time employee during class period)

Final pay claim: $301,600.00 (based on analysis of time and pay records showing a maximum of 58 terminated class members owed a maximum of $5,200 apiece)

Wage statement claim: $148,500.00 (1,517 pay periods at $50 then $100 per pay period, per employee, based on analysis of payroll records)

**Maximum Potential Recovery for Class: $1,004,940** (Emma Decl. ¶ 22.)

Plaintiffs acknowledge that a recovery of this magnitude is uncertain given the risks identified herein and the derivative nature of many of the claims. As discussed above, Defendant contends that it has no liability in this case and that certification for a merits determination would be inappropriate. Class Counsel represents that the proposed settlement of $300,000 is a good result for the Class and certainly a fair, reasonable, and adequate settlement under the circumstances. (Emma Decl. ¶ 23.)

Class Counsel further submits the amount allocated to PAGA penalties ($15,000)

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

is reasonable and should be approved by the Court. There is no articulated standard for approving PAGA settlements. The Court has discretion to award lesser civil penalties under PAGA under section 2699(e)(2) of the Labor Code, and PAGA settlements for as little as $0 have been approved. *See Nordstrom Com'n Cases*, 186 Cal.App.4th 576, 589 (2010) (approving PAGA settlement and release that allocated $0 to PAGA claim). Courts have also approved settlements for $20,000 or less. *See, e.g., Hicks v. Toys 'R'Us–Delaware, Inc.*, 2014 WL 4703915, at *1 (C.D. Cal. Sept. 2, 2014) (approving $5,000 PAGA payment in a case involving $4 million settlement); *Williams v. Brinderson Constructors*, 2017 WL 490901, at *5 (C.D. Cal. Feb. 6, 2017) ($10,000 PAGA payment in $300,000 settlement). Given the total amount of the proposed settlement, the $15,000 allocation to PAGA represents a meaningful allocation.

Plaintiffs and Class Counsel believe that this recovery sufficiently and fairly compensates the Class Members, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation...." *Officers for Justice*, 688 F.2d at 624. Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Furthermore, the Court should consider that the Settlement secures for payment to the Class now, rather than a speculative payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

### 3.   The Risk, Expense, Complexity, and Likely Duration of Litigation

Although a settlement has been reached, Defendant continues to deny any liability or wrongdoing of any kind associated with the claims alleged in the action and further denies that, for any purpose other than settling the action, it is appropriate for class treatment. Thus, even if Plaintiffs were to obtain certification, motions for decertification would likely follow. Similarly, if Plaintiffs were to maintain certification through trial and secure a favorable verdict, an appeal

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

-12-

**EMMA LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

would likely follow.  (Emma Decl. ¶ 24.)

Further litigation would not serve the interests of the Class because it would require Class Members to risk receiving nothing at all or a small fraction of what they are receiving pursuant to the Settlement.  Further litigation may require each Class Member to offer individualized evidence, and perhaps more importantly, the delay, uncertainty, and litigation costs associated with such efforts would be significant and be without any assurance of recovery.  *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1995) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").  Although Class Counsel believes that Plaintiffs' claims are meritorious, Class Counsel is experienced and understands the attendant risks of prolonged litigation and the ever-shifting landscape of wage and hour jurisprudence.  The Settlement affords the Class prompt and substantial relief while avoiding legal and factual hurdles that could prevent the Class from obtaining any recovery at all.  (Emma Decl. ¶ 25.)

### 4.    The Stage of the Proceedings

The stage of the proceedings at which the Settlement was reached also militates in favor of final approval.  Over the course of nearly two years, the Parties conducted extensive written discovery and exchanged detailed information and data concerning the claims, defenses, and alleged damages at issue herein.  Class Counsel met and conferred with counsel for Versace continuously to ensure sufficient information had been exchanged to permit a thorough evaluation of the claims at issue.  For example, Class Counsel obtained the contact information for putative class members and then interviewed them.  Class Counsel reviewed thousands of pages of documents produced in response to written discovery requests, including documents pertaining to the policies and practices complained of herein.  Class Counsel reviewed time and pay records to ascertain the types and frequency of violations.  Class Counsel engaged an expert statistician to analyze class-wide time and pay records to construct a damages model.  Class Counsel conducted several depositions.  (Emma Decl. ¶ 26.)

-13-

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

Based on the foregoing, Class Counsel was in an excellent position to evaluate the fairness of the Settlement because an extensive investigation was conducted through both formal and informal exchanges of documents and information.  Class Counsel submits that the stage of proceedings were sufficiently advanced to permit final approval of the Settlement.  (Emma Decl. ¶ 27.)

### 5.    Experienced Counsel Adequately Represented the Class

Class Members have been well-represented by experienced Class Counsel throughout several years of litigation.[8]  As discussed above, Class Counsel ensured that investigation, discovery and litigation were sufficiently mature prior to agreeing to mediation.[9]  This Settlement is the result of a full day of serious, informed, and non-collusive negotiations before Mark Rudy, an experienced and well-respected neutral for wage and hour class actions.  Class Counsel maximized recovery, fighting to ensure the terms of any class settlement would be fair and reasonable.  After the key terms of the Settlement were agreed to, Class Counsel continued to advocate for provisions and interpretations that were most favorable to the Class.  The Settlement went through several iterations and was carefully drafted and reviewed to protect the interests of the Class Members.  Indeed, negotiations were hard-fought and at arm's-length from start to finish.  (Emma Decl. ¶ 28.)

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the litigation.  This is because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each parties' expected outcome in the litigation' [and] [t]hus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Nat'l Rural Telcomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations omitted).

Here, the Parties were represented by experienced and capable counsel who have

---

[8] Leonard Emma and Stephen Ilg have been practicing for 16 and 8 years, respectively, and each of them has litigated over 25 wage and hour class action matters to a class-wide resolution.

[9] In fact, Class Counsel declined to proceed with an earlier scheduled mediation in order to first obtain more discovery.

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

1   countinuously and zealously advocated their respective positions for nearly two and half years.

2   Accordingly, "[t]here is likewise every reason to conclude that settlement negotiations were

3   vigorously conducted at arms' length and without any suggestion of undue influence." *In re*

4   *Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

5   **6.      The Response of the Class to the Proposed Settlement**

6           Thus far, the Class has responded extremely favorably to the Settlement, further

7   supporting final approval.  The Ninth Circuit and other federal courts have made clear that the

8   number or percentage of Class Members who object to or opt out of the settlement is a factor of

9   great significance.  *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir.

10  1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y.

11  2001) ("[i]t is well settled that the reaction of the class to the settlement is perhaps the most

12  significant factor to be weighed in considering its adequacy") (internal quotation marks and

13  citation omitted).  "The reaction of class members to the proposed settlement, or perhaps more

14  accurately the absence of a negative reaction, strongly supports settlement."  *Chun-Hoon v.*

15  *McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (emphasis added).

16          Indeed, the fact that zero Class Members have objected to the Settlement is a "persuasive"

17  showing that the settlement is adequate.  *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D.

18  Cal. 1979) (objections from 16% of the class constituted a "persuasive" showing that settlement

19  was adequate); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("The

20  court had discretion to find a favorable reaction to the settlement among class members given

21  that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000

22  submitted claims forms and only fifty-four submitted objections."); *Churchill Village, L.L.C. v.*

23  *General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (noting favorably "that only 45 of the

24  approximately 90,000 notified class members objected to the settlement.").  Furthermore, zero

25  Class Members submitted written exclusions to date.  In addition, Class Members have expressed

26  their support for the Settlement.  Thus, the lack of objectors, the lack of opt-outs, and the favorable

27  reaction of the Class together evidence that the Settlement Agreement is fair, adequate, and

28

-15-

EMMA LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
(415) 362-1111

1 reasonable.

2 **V.    THE PARTIES HAVE IMPLEMENTED THE COURT-APPROVED NOTICE PROGRAM AND THE SETTLEMENT ADMINISTRATOR'S FEES MAY BE AWARDED**

3

4    As detailed above, the Settlement Administrator is in the process of carrying out the Court-

5 approved notice program, and its fees and expenses should be approved.  Applicable statutory

6 and case law vests the Court with broad discretion in fashioning an appropriate notice program.

7 *See* Fed. R. Civ. P. 23(e)(1).  "The class notice must be (1) reasonably calculated to apprise

8 interested parties of the pendency of the action and afford them an opportunity to present their

9 objections and (2) must satisfy the content requirements of Rule 23(c)(2)(B)."  *Mullane v. Central*

10 *Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  As discussed above, the Settlement

11 Administrator will submit a declaration after the deadline to opt-out and object has passed.

12 **VI.    CONCLUSION**

13    Counsel for the Parties have committed substantial amounts of time, energy, and resources

14 investigating, litigating and ultimately settling this case.  In the judgment of Plaintiffs and Class

15 Counsel, the proposed settlement is a fair, adequate and reasonable.  The favorable reaction of

16 the Class to the Settlement supports this finding.

17    Accordingly, Plaintiffs respectfully request that the Court approve the Settlement and

18 enter the concurrently filed [Proposed] Order Granting Final Approval to the Settlement.

19

20                        Respectfully Submitted,

21 DATED: April 8, 2019            EMMA LAW, P.C.

22

23                        /s/ Leonard Emma

24                        _____
                         Leonard Emma, Esq.
25                        Attorneys for Plaintiffs and the Class

-16-